Trial of Van Tassel v. State Farm Mutual Insurance Co Time-consuming, and even though they had extremely large diminished value cases, both of their cars were relatively valuable and the cars were train wrecks after repair, they still were not able to come out ahead by trying the case. Yet, the trial actually demonstrated that the hypothetical arguments that were being made by State Farm and were adopted by the district court below to deny class certification, the purported coverage issue, that there was no claim of coverage or there wasn't coverage for Mr. Van Tassel, the purported need to somehow present a claim to make some kind of formal DV complaint had absolutely no basis in the record. Mr. Mealy, I think we're kind of familiar with the facts here. Let me ask you, how would you define the typical class member here? The typical class member is somebody who has a claim that was determined, as defined in the class definition, a claim that's determined by State Farm to be covered under the Uninsured Motorist Property Damage Coverage, which under Washington law allows them to have recovery for diminished value. That's Kales and the OMI decision, Kales v. State Farm and Pacheco v. OMI. And then under Molar 3 and Molar 2, the claims involve the loss in market value, and that's what the jury instruction says in Washington. Not every uninsured motorist claim is part of it, because only certain vehicles suffer diminished value after an accident. The car has to be five years old, no more than five years old. It has to have no more than 90,000 miles on it. It has to have more than $1,000 worth of repair costs, so we're not talking a parking lot dent. And it has to have repairs that are made to the body's structure or frame or to the vehicle's body. Counsel, I'm not sure you're answering Judge McGeough's question about the typical plaintiff. Well, the typical plaintiff in this case is anyone who falls within the class definition, in the sense that the audience... So does your typical plaintiff have to be somebody who's aware of this type of coverage? No. And does your typical plaintiff have to be somebody who has requested this type of coverage? No, that's not in the class definition, nor does that reflect reality. I mean, this is typical in class actions. People don't even know that they have these kind of claims. There's nothing in the allegations of the class. Except these two plaintiffs did, and they made claims, right? Yes. These two plaintiffs asked for coverage. Yes, yes. Did I understand this correctly? It looks like the district court's typicality finding pertained to Mr. Plank's WCPA claim, not the breach of contract claim. Is that correct? I mean, because it appears that the jury only decided the breach of contract claims when both Mr. Plank and Van Tessel proceeded to trial individually. So what happened to the WCPA claims? Because it looks like there was no jury instruction on that, or from what I can tell, did that claim get dropped? The claim was dropped. It only proceeded to trial on the breach of contract claim. How did it get dropped? Frankly, Your Honor, given the tenor of the judge and everything, given who determines these claims in the state of Washington, we did not feel that it was advantageous to put on what would have been a very, very expensive trial with more witnesses on the issue of a consumer protection violation. So you voluntarily dropped it? Voluntarily. For these two plaintiffs, we voluntarily dropped the Consumer Protection Act claim. We did not go to the jury on that. Okay, interesting. This case seems to be different from others in which an insurer takes the position that it will never pay diminished value damages or adopts a formula to calculate damages. Why doesn't the district court's finding that the State Farm individually assessed these diminished value damages based on the evidence each claimant submitted defeat a finding of predominance here? Well, I can explain in two ways. Actually, it is identical to what the findings were and the facts were in Assiger. In Assiger, the insurer determined that it was covered under the policy and said it was covered under the policy. Assiger, you had to tell them you wanted DV, in which case, they would, in the case of Mr. Assiger, he told them they wanted DV and they didn't give him DV. What IDS would do is when they got into a claim, they then would run what's called the 17C formula, which is what's used in Georgia. What State Farm would do was they wouldn't do anything. What they would do, and it happened to both class representatives, they would just say, submit whatever you want, and then they'd do a desk review. But again, what... But Assiger used a universal formula to calculate the... It seems like that's what it did. Universal formula to calculate diminished value damages. That seems different from what happens here. No, that wasn't actually what the record indicated was the case that happened on a daily basis.  They would, to the extent that they were inclined to pay the claim, they would then offer what was under the 17C formula. But again, we're talking a very, very few people who actually submit claims. There's no evidence that anyone actually submitted, was paid a claim in the state of Washington by State Farm in the record. And so in those few cases, the difference was that in the few cases in Assiger, they would have theoretically extended the 17C number. In this case, State Farm doesn't theoretically extend anything. They place the burden onto the insured to come forward, and they won't pay anything unless the insured somehow convinces them. But again, the key issue here is that under Mueller and under Washington law, it's a market value loss. And to the extent that we as plaintiff's counsel can come forward with the evidence that demonstrates what should have been paid, then the fact that State Farm did pay something, assuming it did, again, there's no evidence in the record they did, what that does is it just merely is an offset. And in fact, that was the plaintiff, Mr. Plank. He was paid something not by State Farm but by another insurer, and there's an offset. In Mueller, because I want to give you the opportunity to respond to this, didn't the insurer take the position that diminished value damages were excluded across the board from the policy? Absolutely. Some insurers in Mueller was not. So isn't that different from what's going on here? What happened here? Well, this case is like Asseger where they determined that it was covered under the policy. So they come in both things. And there's a reason why, Your Honor. Mueller involved a collision in comprehensive claim. Asseger involved also uninsured motorist claims as did this. And a number of the other cases that we provided where they've been certified were also uninsured motorists. Now State Farm made the argument below that there was no coverage under uninsured motorists. I think Kales and Pacheco made clear that that argument was incorrect. They actually argued to the district court there was no coverage. But their own policy guidance that's in the record says, and this is national guidance, says that it's owed under the uninsured motorist property damage claim. But the mere fact that a defendant, you know, I mean, this happens all the time. The mere fact that a defendant may, within a class, pay a few people something, the question is, did they pay an adequate amount? The amount is, if they actually paid it, they can pull from State Farm's records exactly what they paid. We know because either there's a code for it or they record it in the claims notes and those are searchable electronically. So they can come forward with a list of everyone they paid and the amount they paid. If we demonstrate their own X and they come forward and say, Oh, well, we actually paid Y. Well, then they get a credit for that. Now, they can argue to a jury in those few cases, Your Honor, that they paid an adequate amount. Somehow they fairly adjusted the claim. If they succeed on that, then there will be, you know, the jury may award them as to those people may reduce the damages or there may be a verdict for the defendant. But it does not provide a defense to say in a class action case where literally, I mean, this case involves tens of thousands of people who were not paid a claim that is owed in the state of Washington. And the fact that they paid maybe a few people. And again, there's no evidence in the record they paid anyone. And our class representatives asked and were just stonewalled by State Farm. So, you know, I mean, I'm not saying it's not possible somebody was paid. But the fact that somebody was paid or a few people were paid does not defeat recovery for everybody else because we're dealing with a market value. As long as we can put on what the DV is, if State Farm paid something different, they can try to defend that. But that does not defeat recovery for everyone else. You're well into your rebuttal time, so I don't know if you want to reserve the three minutes. I recognize that. And I'll reserve the rest. I'd make one final comment. This is just a classic example of cases from the flow. Moller held this. Moller III held this. That individual facts regarding damages don't defeat it. That's the court holding of Blackie v. Barrett from 1975, Your Honor. And as we cited multiple cases, it's been upheld multiple times. It's a damages issue. There are a few cases where theoretically they maybe paid this claim. And they're welcome to come forward with that evidence to demonstrate they paid something. If they can justify to the jury that was adequate on those few claims, then there's an offset given. But this is the kind of thing that happens in class actions regarding damages all the time. It doesn't reflect the common liability claim or the common claim for an amount of margin of value loss. And I'd also add, Your Honor, that, of course, the situation is very different when one has an insurer who's providing you no information and no claims handling services, and maybe they agree to pay you a small amount to make you go away, but they don't assess the valuation of things. They don't have an approach. They just kind of say, give us what you want to give us. And that is not a case where they have a system of affirmatively paying. But even if they did have a system of affirmatively paying, it would again be a question of whether what they paid was an appropriate amount, and that was what the holding was in Asseger. The question was whether what they paid, if any, was sufficient. That holding covers, and the judge should have found here, that covered this case. I'll reserve the rest of my time, Your Honor. Very good. Thank you. Mr. Kerbin? Good morning, Your Honors, and may it please the Court. Tom Kerbin for the FLE State Farm. The district court, after conducting the rigorous analysis that's required by Rule 23, by the Walmart v. Duke's case, and by the Comcast case, acted well within its discretion in denying B-3 certification in a class of tens of thousands of individual claims for breach of contract and statutory deceptive trade practice is that claim. The court found that individualized questions of liability, and this is key, not calculation of damages, but individualized questions of liability predominated and that a class action would not be superior to litigating the individual claims in the way that the two remaining class members' claims actually went to trial. Let me ask you. Go ahead, Judge McGammon. Sorry, how do you define a typical class member? I wanted to find out how do you define a typical class member here? Well, we would, I guess we would start with, and what was before the district court was the class definition that was proffered by the plaintiffs, and it had to do with someone who presented a claim for UIM property damage coverage, the claim was covered, and that it met certain other parameters to, based on the individual circumstances of the particular wreck. I would, Your Honor, to the extent there is a concern with typicality here, I would submit that, unlike the Axiger case, that's really a red herring and not an issue that the court need address in order to affirm the district court's ruling. And the reason I say that is that we can see that the district court found that at least one class member, Mr. Van Tassel, that his claim was typical of the class for both the breach of contract and the statutory claim. The typicality discussion that the district court engaged with went as to Mr. Van Tassel's, I'm sorry, Mr. Plank's statutory claim. But we can see that the district court found that, and you only need one, I think you only need one representative member to satisfy typicality, and the district court concluded that Mr. Van Tassel satisfied the minimum standards for typicality, and we haven't contested that finding, Your Honor. Our view is the district court's decision should be affirmed because the district court, after doing what Walmart and Comcast require, concluded within its discretion and based on the unique factual record of this case, not the Axiger case or any of the other DV cases that are in the court, the court found that here the plaintiffs could not prove that individualized issues or that common issues would predominate. We submit that's a correct finding. Nor could they prove that a class-wide trial in which these two plaintiffs could attempt to prove liability and damages on behalf of 10,000 plus people, that that would be superior to an individualized trial. And we submit that both of those findings, both on predominance isn't met and superiority isn't met, were correct. They were within the court's discretion and should be affirmed. Now... Is State Farm really conducting an individualized assessment of damages here? Not just damages, but liability, Your Honor. Well, that's the whole dispute, I think, here. How would you characterize what State Farm is doing, what it's doing here? Is it true that State Farm has one common process for diminished value claims in the sense that all claims are read the word track? Here's what the evidence shows. First of all, and I would just answer this, these illustrate distinctions with the Axiger case. Sorry, Counsel, you froze up for just one second. In response to Judge McGeeh's question, could you start over? The evidence shows what? Judge Christin, can you hear me now? I can now, thank you. Sorry, Bob. Yes, so in answering that question about what State Farm's practices are, I would like to keep in mind that these are key distinctions between this case and the Axiger case. And the first step in the process is that State Farm conceives that diminished value, where it exists, may be covered or is covered under the UM coverage in Washington State. And indeed, we produce policy manuals that go out to all the adjusters that say that, that in the state of Washington, the company's UM coverage does in fact cover diminished value where that's shown to exist. And secondly, as to the use of a word track, yes, Judge McGeeh, we do, State Farm does use that word track, and it expects its adjusters to use that in their initial communications with the policy holders. And we think good evidence of that, that that actually happens, it's not just theoretical, is what happened with Ms. Jenkins' claims. Now, the appellee here focuses primarily on what happened with Mr. Van Tassel and Mr. Plank's claims when they went to trial, but it's important not to lose sight of what happened with the initial class representative, Ms. Jenkins. We know that on at least two occasions, this evidence was before the trial court and discussed somewhat in the trial court's orders. We know that State Farm on at least two occasions did in fact discuss diminished value with Ms. Jenkins, and that would be consistent with its word track. And we also know that State Farm, instead of, as the appellee would suggest, ignoring the diminished value claim with Ms. Jenkins, the evidence in the record, and we discussed this in our brief, the evidence was Ms. Jenkins was still getting her car repaired, there were some problems with repairing, and State Farm said, let's get your car repaired and then we'll talk about your diminished value claim. And so that sort of highly individualized claim treatment sort of illustrates some of the district court's conclusions that at least the way State Farm handles diminished value claims, it's highly individualized. And then as to what the evidence was as to how State Farm adjusts for diminished value, the evidence is that State Farm, unlike AXSCR, does not use a formula in the state of Washington. Our evidence was clear. Our 30B6 witness testified unequivocally there's no formula in the state of Washington. Instead, it's a holistic approach. State Farm will consider whatever evidence the policyholder submits. State Farm, the evidence, and this is in our brief, State Farm sometimes conducts market research. That is, they may do surveys of what vehicles are selling for in the market. The evidence, and this is cited in our brief, State Farm on occasion will actually hire an own independent appraiser to give an assessment of values. State Farm will consider the results of inspections where they're done. Is that why several other sets of plaintiffs have been able to certify classes seeking diminished value damages? I'm just trying to figure out what we should make of those cases and kind of zero in on what the difference is. Sure, so some of the key differences were, in particular in the Oxnard case, there was no evidence in Oxnard that the company was affirmatively telling its policyholders that diminished value is covered and you have the right to present a claim. That's a key distinction here. There was no, and indeed in the Moeller case, I think Your Honor may have foreshadowed this earlier, in the Moeller case, the evidence was that the insurer had what one of the courts characterized as a don't ask, don't tell policy. The insurance company in Moeller never told its policyholders about diminished value because it took the position diminished value wasn't covered. That's a key distinction between that case and this case. A third distinction is that some of the other insurance companies were using a uniform formula to calculate diminished value as a be all, end all. That's what the evidence seemed to show in the Oxnard case. Indeed, the unpublished memorandum opinion in Oxnard mentioned that formula a couple different times and we think that was important because there, where the company is only using the formula based on what the court there said was readily available data, one can imagine that it might be more readily, a class might be more readily capable of class-wide proof. But here we don't have that formula at all. We don't, there is no uniform formula. It's a holistic approach that the company uses. And so those are key distinctions. And another one I would mention between this case, some of the other cases in Oxnard is that the linchpin for plaintiff's class case here, both on liability and damages, and again, it's important to keep in mind the conclusion that the trial court made here, which is the problems with the plaintiff's proof are not simply calculating damages. They're not individualized damages calculations. They go to their inability to prove liability on a class-wide basis. Because to prove liability for breach of contract, you have to prove that diminished value was suffered, a claim for diminished value was made, and it wasn't paid. That's what gets you a breach of contract. And here the plaintiffs cannot do that on a class-wide basis. And then their claim for statutory, the deceptive trade practices, also requires them to prove on a class-wide basis that the insurance company affirmatively misled its policyholders or failed to disclose something material. There's no way to prove that on a class-wide basis here when the evidence was to the contrary, that State Farm had a policy. Now, whether every single adjuster in 10,000-plus claims did it all 10,000 times, that's an individualized issue. But at least State Farm had a policy training its people and expecting its adjusters to affirmatively have a discussion with the policyholder about diminished value. So those are key distinctions between this case, the Oxnard case, and the other cases. And I would submit that that reinforces the sort of rigorous analysis that the Dukes case says that federal courts under Rule 23 are required to go through before certifying a class or before denying certification of a class. And I think if a trial court is faithful to that requirement and does, in fact, go through the sort of rigorous analysis the Dukes is required, it's not surprising that you would reach different conclusions with different insurance companies who handle claims in different ways and with different representative class members as you have in the different cases. And I guess the next point I would make goes to superiority here. The argument was made that the trial in this case actually illustrated the errors in the district court's denial of class cert. We would submit just the opposite is the case. These cases went to trial, and at the trial, notably, the plaintiffs did not attempt to prove breach or damage through the use of their economist expert. That was the expert, and this finishes a point I raised earlier. Another distinguishing fact here from the other cases is that the court specifically found here that the plaintiff's statistician or economist who they were going to use to prove class-wide breach and damage, that his analysis, which was more than 20 years old, was no longer a fit for the facts of this case. And so when this case went to trial, they had very individualized proof of liability and damages. They put on an appraiser who actually did appraisals of the vehicles and produced individualized evidence that diminished value was owed and that it wasn't paid. And indeed here, the jury awarded one plaintiff 7,800 and the other plaintiff 6,000, and the argument, the suggestion that it was not worth trying the case, I think in part that an issue there is that they did fall. The plaintiffs dropped their statutory claim, that had they proceeded to trial on the statutory claim, there is a remedy out there that includes additional damages and attorney's fees. But that was a tactical decision the plaintiffs made not to proceed with that. So again, for all these reasons, we submit that the district court acted well within its discretion in conducting the rigorous analysis required here and denying class certification, and we respectfully submit that decision should be affirmed. I'd be happy to answer any questions the panel might have, but my hunch is my time is rapidly expiring, although I can't see it. You have a little time left. I want to make sure I'm understanding you. The final argument as to superiority, and it may not be, I'm truly not sure I understood it, is your contention that claims of this size are going to be economical to be tried individually? Your Honor, I would just say my experience in other states is that individual claims for diminished value are brought all the time and go to trial all the time. So is that a yes? Yes. Yes, that these claims can be tried economically and feasible, and particularly where there is a statutory claim that holds the possibility of damages beyond compensatory damages and attorney's fees. So yes, Your Honor, we do believe that these claims can go forward on an individual basis, and they're not diminished value claims within the meaning of the Mueller case. I guess the final note, if I have any time left, is I would have the district court. There was a suggestion that the district court abuse its discretion in not allowing another round of briefing after Oxeter. I would note that the district court initially denied class certification. There were two motions for reconsideration that the court denied. Those were extensively, so class certification was extensively briefed for Oxeter. And then after Oxeter came down, there were two motions, a motion for additional round of briefing and then a motion for reconsideration. Those issues are plainly within the court's discretion to manage its docket, and if you read the court's decisions, the court did consider the record that was before this court in the State Farm case and concluded that Oxeter was not controlling. We submit for the reasons we discussed earlier in our brief that that decision was not only correct, but was certainly within the district court's discretion. The issues have been thoroughly briefed, and the court reached the right conclusions. Thank you, Your Honor. Thank you, Mr. Curran. Mr. Neeley? Your Honor, I'd just like to start right off with the assertion that somehow this was a liability versus damages issue, and I think it's an important one because the question in what State Farm you reviewed, to the extent anyone submitted a claim, there's no evidence anyone submitted a claim, there's no evidence any DB was paid in the State of Washington, there's certainly no evidence of any trials that have been done economically under the superiority prong. And of course, those are key points, and there's just no evidence in the record of that. There's an assertion based upon some national guidance that maybe this occurs, but there's no evidence. But Moeller directly addressed the liability question because the review that State Farm claims it does is to ask how much is your vehicle reduced in value, and then they'll either theoretically pay you the amount that you claim or they'll pay you some amount or they'll pay you nothing. Their determination is, is your vehicle reduced in value or not? That is an amount of damages. Moeller directly addressed this issue to judges, Judge Alexander and Judge Seinfeld, who's a pro tem judge, arguing this was a liability issue, how much damages you could recover. And specifically as to prior accident damages, he said, well, maybe some people can't recover because of some fortuity in the facts, and therefore it's a liability issue. And the majority in Moeller said as a matter of Washington law that no, it was a damages issue. It came up in the question of what the class could recover and what individuals could recover. In this court, I want to highlight the fact that this is a defense that they are raising. They're raising a defense that they paid something, okay? They bear the burden of demonstrating that in defenses under the true health case, especially unsupported defenses do not support denials of class certification. It's a hypothetical argument that was used to deny, that may have happened to a few people on a damages issue, that was used to deny an opportunity to vindicate rights that the state of Washington and multiple court opinions have said can be covered by class action cases and are required under the statutory coverage. Let me see if Judge Kristen or Judge Lynn have any further questions. No. Judge Lynn? Okay. Thank you. Thank you, Mr. Neely. Thank you, Mr. Kroger. I appreciate your oral argument presentations here today. The case of Charles Van Tassel v. State Farm Mutual Automobile Insurance Company is submitted. And that concludes our docket for this morning. And so we are adjourned.
judges: Murguia, Christen, Lynn